FILED
**United States Court of Appeals
Tenth Circuit**

**July 16, 2009**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DERRICK R. PARKHURST, and all
other persons who are now or may be
similarly situated,

        Plaintiff-Appellant,

v.

ROBERT O. LAMPERT, individually
and in his official capacity as
Wyoming Department of Corrections
State Penitentiary Warden; MICHAEL
MURPHY, individually and in his
official capacity as Wyoming
Department of Corrections Director,

        Defendants-Appellees.

No. 08-8069
(D.C. No. 2:07-CV-00279-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Derrick R. Parkhurst, a prisoner in the custody of the Wyoming Department of Corrections (WDOC) appearing pro se, appeals from the district court's entry of summary judgment in favor of defendants. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand in part.

**I**

The facts are mostly undisputed. Mr. Parkhurst is the chairman of the Wyoming Prisoners' Association (WPA), an unincorporated, nonprofit association registered with the Wyoming Secretary of State. He also is an official of the Wyoming chapter of the Citizens United for Rehabilitation of Errants (WY-CURE). He combined the newsletters of the WPA and the WY-CURE to form what he calls the WPA Law Review and CURE Newsletter, which concerns matters of interest to Wyoming state prisoners. In June 2006, Mr. Parkhurst placed 693 copies of the newsletter in one FedEx box addressed to the Wyoming State Penitentiary (WSP). The newsletters were individually addressed to specific prisoners, allegedly including each prisoner's WDOC correctional facility number. Officials at the WSP refused to deliver the newsletters allegedly based on Wyoming Policy and Procedure (WPP) #5.401(IV)(C)(1)(k), which, at the time, provided in relevant part that non-privileged mail may be rejected if it "[c]ontains material not intended for the addressee; but rather material intended for other parties." R., Doc. 14-4, Ex. A at 5. Defendants claim the box of newsletters was returned to its sender, but according to Mr. Parkhurst, the box

was returned to a FedEx office, not to him. WSP officials did deliver several copies of the newsletter that Mr. Parkhurst sent individually via United States mail, including one copy he sent to himself.

Dissatisfied with the nondelivery of the 693 newsletters, Mr. Parkhurst filed this action under 42 U.S.C. § 1983, naming defendants in their official and individual capacities.[1] He claimed that the refusal to deliver the newsletters violated his right to free expression under the First Amendment of the United States Constitution and his right to freedom of speech and the press under the Wyoming Constitution. He sought an order prohibiting defendants from refusing to deliver the newsletter in the future, and damages for the cost of reproducing and reissuing the newsletter. He also sought class status for all WDOC prisoners who were deprived of their right to receive the newsletter.

Defendants moved for summary judgment on a number of grounds: Mr. Parkhurst's claims as a publisher of the newsletter were moot due to passage of a revised mail policy effective March 31, 2007; Mr. Parkhurst lacked standing as a subscriber of the newsletter because he received a properly addressed and mailed copy of the newsletter; defendants were immune from official-capacity claims for damages under the Eleventh Amendment; and defendants were entitled to qualified immunity against individual-capacity claims for damages.

---

[1] Defendant Robert Lampert is the director of the WDOC, and defendant Michael Murphy was the WSP warden at the time.

-3-

Defendants also opposed class certification. The district court granted defendants' motion for summary judgment on the grounds of mootness, lack of standing, and qualified immunity, and denied as moot the motion for class certification. Mr. Parkhurst has appealed.[2]

## II

When a case is decided on summary judgment, we review the district court's decision "de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the

---

[2] The district court ruled that to the extent Mr. Parkhurst claimed injury as a recipient of the newsletter, he lacked standing because he received a copy. But as Mr. Parkhurst admitted in his summary-judgment response, he sought relief only as the publisher of the newsletter, and he has not pursued relief as a subscriber on appeal. Therefore, we need not give further consideration to the court's ruling on standing. The court did not rule on defendants' assertion of Eleventh Amendment immunity, apparently based on Mr. Parkhurst's concession that he was not seeking damages against defendants in their official capacities. Thus, we do not consider Eleventh Amendment immunity. Our review is confined to mootness, whether there was a constitutional violation, and whether defendants are entitled to qualified immunity.

issue either way[,]" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). We construe Mr. Parkhurst's pro se pleadings and court papers liberally but without acting as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## III

We first address the district court's ruling that Mr. Parkhurst's claims as publisher of the newsletter were mooted by the passage of a revised mail policy. The district court based its mootness ruling on the new mail policy that took effect on March 31, 2007, nearly one year after the conduct at issue here. Mr. Parkhurst notes that the new policy contains a materially identical provision regarding the rejection of mail intended for "other parties."[3] In a supplemental brief on this issue, defendants conceded that the revised policy does not render the case moot. We accept that concession, as our review of the revised mail policy does not permit us to say "with assurance that there is no reasonable expectation that the alleged violation will recur," which is one part of the test for mootness when voluntary cessation of allegedly illegal conduct is at issue,

---

[3] Mr. Parkhurst also makes the contrary assertion that whether defendants violated the mail policy is "completely irrelevant" to his claims except as to damages. Aplt. Br. at 5 & n.7. We disagree.

*Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (quotation and alteration omitted). We therefore reverse the district court's mootness ruling.[4]

**IV**

Having conceded the case is not moot, defendants argue that we can affirm on all claims on the ground that there was no constitutional violation. As part of its qualified-immunity analysis, which applies only to individual-capacity claims for damages, *see Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006), the district court determined that there was no constitutional violation based on *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977). Before turning to damages and the qualified-immunity issue, we examine *Jones* in the context of Mr. Parkhurst's official-capacity claims for injunctive relief.

In *Jones*, the Union mailed packets of its publications in bulk to several prisoners for redistribution to other prisoners. Prison officials refused to deliver them on the ground that they were sent in bulk, although officials delivered bulk mailings sent by Alcoholics Anonymous and the Jaycees. In concluding that the prohibition on bulk mailing did not violate the *prisoners'* First Amendment rights to free speech or association (the Union had raised only an equal protection challenge to the regulation, *see id.* at 130 n.7), the Court said:

---

[4] The district court's mootness ruling necessarily was limited to Mr. Parkhurst's request for prospective injunctive relief from defendants in their official capacities, as passage of the revised policy cannot moot his individual-capacity claims insofar as he seeks damages for defendants' past conduct. We will address the damages claims in Section V below.

An examination of the potential restrictions on speech or association that have been imposed by the regulations under challenge, demonstrates that the restrictions imposed are reasonable, and are consistent with the inmates' status as prisoners and with the legitimate operational considerations of the institution. To begin with, First Amendment speech rights are barely implicated in this case. Mail rights are not themselves implicated; the only question respecting the mail is that of bulk mailings. The advantages of bulk mailings to inmates by the Union are those of cheaper rates and convenience. While the District Court relied on the cheaper bulk mailing rates in finding an equal protection violation, it is clear that losing these cost advantages does not fundamentally implicate free speech values. Since other avenues of outside informational flow by the Union remain available, the prohibition of bulk mailing, reasonable in the absence of First Amendment considerations, remains reasonable.

*Id.* at 130-31 (footnotes, citation, and emphasis omitted). In a footnote to this analysis, the Court quoted from the prison director's affidavit, which indicated that the mail regulation at issue prohibited prisoners from receiving packets of material for redistribution but not publications sent to them directly by the publisher. *Id.* at 131 n.8.

*Jones* is not sufficiently on point to support the conclusion that defendants' conduct was not unconstitutional. In *Jones*, the Court appeared to touch on the Union's First Amendment rights under the ban on bulk mailing when discussing lost cost advantages, but the Union asserted no such rights under the First Amendment; the Court was discussing the *prisoners'* First Amendment rights to receive mail sent in bulk. In the present case, Mr. Parkhurst asserted his First Amendment right as the publisher of the newsletters, not as a prisoner-recipient.

-7-

Moreover, in *Jones* the bulk packets were sent to a few prisoners, not to the prison itself, and there is no indication that the individual items in the packets were individually addressed. As noted above, the regulation at issue in *Jones* was meant to prevent prisoners from receiving packets of materials for redistribution. And there were concerns in *Jones* that (1) the bulk packets could contain contraband, and it would be difficult to inspect every item; and (2) the prisoner-to-prisoner solicitation of union membership, apparently aided by distributing the mailed materials, raised security concerns because it was a "legitimately prohibited activity." *Id.* at 131-32 & n.8. Here, the newsletters were not sent in bulk to other inmates for redistribution, they were individually addressed, and their content is apparently not objectionable on security grounds because the prison delivers newsletters that Mr. Parkhurst mails individually.

Another distinction between *Jones* and this case is a facial one. The mail policy on which defendants relied does not concern bulk mailings to prisoners, it concerns mail intended for someone other than the addressee. Nonetheless, we recognize that as applied, the policy was the ground for rejecting the newsletters, which were sent in a presumably more cost-effective manner akin to the bulk mail in *Jones*, and Mr. Parkhurst has another avenue for sending the newsletters—by individually addressing them and mailing them separately. Thus, he has lost only a cost advantage, which, under a broad reading of *Jones*, may not fundamentally implicate free speech values of publishers.

But we do not read *Jones* that broadly. The Ninth Circuit, in *Prison Legal News v. Cook*, a case Mr. Parkhurst relies on, distinguished *Jones* on a number of the foregoing bases as well as others. *See* 238 F.3d 1145, 1149 (9th Cir. 2001). *Cook* concerned a refusal to deliver a newsletter solely because of the mailing rate used by the publisher, Prison Legal News—the rate applicable to "Standard A" non-profit corporation mail, which the court considered to be a species of "bulk mail." *Id.* at 1146 & n.1. The court first rejected an argument, based on *Jones*, that banning standard mail does not implicate the First Amendment rights of either publishers or prisoners because it results in only the loss of cost advantages, explaining that the speech at issue was core protected speech, not commercial speech, and the receipt of unobjectionable mail does not implicate the sort of penological interests that were advanced in *Jones*. *Id.* at 1149. The court also stated that "paying a higher rate is not an alternative because the prisoner cannot force a publisher who needs to use, and is entitled to use, the standard rate to take additional costly steps to mail his individual newsletter." *Id.* The court then held "that tying the receipt of subscription non-profit newsletters to postal service rate classifications is not rationally related to any legitimate penological interest." *Id.* at 1149-50 (applying test from *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

We agree with the court's reasoning in *Cook* and take a narrow view of *Jones*, which renders it inapplicable to the facts of this case. Thus, we cannot say

-9-

that based on *Jones*, defendants' conduct was constitutional. But we decline to read *Cook* for the broad proposition Mr. Parkhurst advances, that prison officials may not force a publisher to use "a more expensive method of mailing than bulk mail." Aplt. Br. at x. It appears that, as in *Cook*, Mr. Parkhurst's newsletters are noncommercial speech, as they consist mainly of summaries of prisoner litigation, but it is unclear whether any were sent pursuant to subscription.[5] And *Cook* did not concern a refusal to deliver a bulk *packet* of mail like Mr. Parkhurst attempted to send. We therefore cannot say that based on *Cook*, defendants' conduct was unconstitutional.[6]

Moreover, the *Cook* court reached its decision on a developed record that contained a number of proffered penological interests, each of which the court rejected: "bulk mail is voluminous and generally of little value to prisoners; substantial staff is required to sort, inspect and distribute bulk mail; bulk mail poses security concerns; and bulk mail increases fire hazards." *Cook*, 238 F.3d at 1146. The record in this case is not sufficiently developed for a proper *Turner*

---

[5] The parties have not made an issue out of any relationship between subscription status and the First Amendment, and we express no view on the matter.

[6] The district court was of the view that *Jones v. Salt Lake County*, 503 F.3d 1147 (10th Cir. 2007), was the same case as *Cook*. But in *Salt Lake County*, we concluded that prison officials' failure to deliver a publisher's subscription magazine was due to negligence, not to the application of bulk-rate mailing regulations. *See id.* at 1162-63. Thus, *Salt Lake County* involved different facts and is inapposite.

-10-

analysis, which requires a reasonableness inquiry: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (applying *Turner* to a publisher's First Amendment rights to send subscriptions to prisoners). Under *Turner* and *Thornburgh*, there are four relevant considerations: (1) "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective," *Thornburgh*, 490 U.S. at 414; (2) "whether there are alternative means of exercising the right that remain open," *id.* at 417 (quotation omitted); (3) the scope of the "impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison," *id.* at 418; and (4) whether there are any "obvious, easy alternatives [that] may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns," *id.* (quotations omitted).

The first consideration is mandatory. *See Turner*, 482 U.S. at 89 ("[T]here *must* be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.") (quotation omitted) (emphasis added). And it presents a stumbling block here. Until filing their supplemental brief, defendants never advanced any penological objective against which the reasonableness of WPP #5.401 IV(C)(1)(k) can be judged. In their

-11-

supplemental brief, they claim that the district court considered the *Turner* factors, a proposition we reject, and that it "found the logical basis of the rule to be the same as . . . the rule in *Jones*." Aplee. Supp. Br. at 6. As discussed above, there are a number of material distinctions between this case and *Jones*. Defendants' reliance on *Jones* is therefore a poor fit on the first prong of the *Turner* analysis. Because defendants failed to identify in the district court a legitimate penological interest served by their refusal to deliver the newsletters, and they have not remedied this failure on appeal, we need not analyze the other *Turner* factors. Instead, we remand on Mr. Parkhurst's official-capacity claims for injunctive relief for further development of the record and a proper *Turner* analysis by the district court. This conclusion does not preclude us from reviewing the district court's grant of qualified immunity on Mr. Parkhurst's individual-capacity claims for damages, to which we now turn.

## V

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted). Although our review of the grant of qualified immunity is de novo, *Weigel v. Broad*, 544 F.3d 1143, 1150 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2387 (2009), it differs from consideration of other summary judgment decisions:

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). We have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818. As our foregoing discussion shows, it is unclear whether defendants violated one of Mr. Parkhurst's constitutional rights. Therefore, this is an appropriate case to address the second prong of the qualified immunity analysis first.

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and quotation omitted). The "weight of authority" standard requires something more than "a handful of decisions from courts in other circuits" that have not been "broadly accepted." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009). Mr. Parkhurst has relied only on *Cook* to meet his burden on the second prong. As we have distinguished *Cook* on a number of bases, we conclude that he has failed to meet his burden to show that any constitutional right to the delivery of his newsletters in the manner that he sent them was clearly established at the time of defendants' conduct. Even if

-13-

*Cook* were applicable, a lone case from another circuit does not satisfy the "weight of authority" standard. *See id.*

Mr. Parkhurst's other arguments do not require a different outcome. He claims that in the course of granting defendants qualified immunity, the district court resolved a number of factual disputes against him, contrary to the court's duty in a summary judgment proceeding. Chief among these is his contention that the refusal to deliver the 693 copies of his newsletter was not based on the mail policy but was due to the content of the newsletters, which he characterizes as embarrassing to defendants. However, this is nothing more than a contention made in his summary judgment response brief, which was not sworn, and in any event is a conclusory, self-serving statement unsupported by any evidence. In fact, Mr. Parkhurst stated only that he "believes, and is prepared to prove" that nondelivery was due to embarrassment. R., Doc. 18, at 4. At summary judgment, the nonmoving party cannot rest on allegations but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Simms*, 165 F.3d at 1326 (quotation and alteration omitted).

Mr. Parkhurst also points to a number of factual errors in the district court's decision, claiming they indicate that the district judge never read his response to the summary judgment motion. Regardless of the accuracy of this allegation, we have read his response and conclude that none of the alleged

-14-

factual errors concern any material facts that preclude summary judgment in defendants' favor on qualified immunity.

## Conclusion

The judgment of the district court is AFFIRMED with respect to the grant of qualified immunity to defendants on Mr. Parkhurst's individual-capacity claims for damages. The judgment of the district court is REVERSED with respect to mootness, and REVERSED and REMANDED for further proceedings consistent with this Order and Judgment with respect to Mr. Parkhurst's official-capacity claims for injunctive relief. Mr. Parkhurst's motion for leave to proceed without prepayment of fees or costs is granted and we remind him of his continuing obligation to make partial payments until his filing fee has been paid in full.

Entered for the Court

Jerome A. Holmes
Circuit Judge