FILED
United States Court of Appeals
Tenth Circuit

March 30, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DERRICK R. PARKHURST,

      Plaintiff-Appellant,

v.

ROBERT LAMPERT, Warden, Wyoming
Department of Corrections, MICHAEL
MURPHY, Director, Wyoming
Department of Corrections, in their
official and individual capacities,

      Defendants-Appellees.

No. 10-8078

(D.C. No. 2:07-CV-00279-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA** and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

This appeal represents the second time this case is before this court. Derrick R.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Parkhurst, a prisoner in the custody of the Wyoming Department of Corrections (WDOC) proceeding pro se, brought this action against the director of WDOC and the warden of the Wyoming State Penitentiary (WSP) (collectively, Defendants) pursuant to 42 U.S.C. § 1983, asserting that their refusal to deliver copies of his newsletter to prisoners in the WSP violated his right to free expression under the First Amendment of the United States Constitution and his right to freedom of speech and the press under the Wyoming Constitution.

In the first appeal, after the United States District Court for the District of Wyoming granted summary judgment on all claims in favor of Defendants, this court remanded Parkhurst's claims for injunctive relief against Defendants in their official capacities to the district court to analyze WDOC Policy and Procedure (WPP) #5.401(IV)(E)(6)(x)[1], which Defendants assert as the basis for their refusal to deliver the newsletters, pursuant to Turner v. Safley, 482 U.S. 78 (1987). See Parkhurst v. Lampert (Parkhurst I), 339 F. App'x 855 (10th Cir. 2009). On remand, based on its Turner analysis, the district court concluded that WPP #5.401(IV)(E)(6)(x) is reasonably related to legitimate penological interests, granted summary judgment to Defendants on the official capacity claims for injunctive relief and dismissed the action. ROA, Vol. 1 at

---

[1] This is the revised version of the mail regulation in effect at the time Parkhurst's rights were allegedly violated, which was codified at WPP #5.401(IV)(C)(1)(k). ROA, Vol. 1 at 156, 304. The current and former versions of this regulation are materially identical as concerns the issues in this case. Compare id. at 147 (documenting WPP #5.401(IV)(C)(1)(k)) with id. at 178 (documenting WPP #5.401(IV)(E)(6)(x)). Thus, our analysis will refer to WPP #5.401(IV)(E)(6)(x).

455–56. Parkhurst appeals this decision. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Although the facts are described in detail in Parkhurst I, we provide a brief summary of the relevant circumstances herein. As the chairman of the Wyoming Prisoners' Association (WPA) and an official of the Wyoming chapter of the Citizens United for Rehabilitation of Errants (WY-CURE), Parkhurst published a combined newsletter for these associations. ROA, Vol. 1 at 18–19. According to Parkhurst, this newsletter provided "a review of current cases filed in the federal courts, and other matters of interest to Wyoming prisoners." Id. at 19. In 2006, Parkhurst shipped approximately 693 copies of the newsletter together in one box addressed to the WSP. Id. Within the box, the copies of the newsletter were individually addressed to specific prisoners. Id. In addition to the newsletters shipped together, Parkhurst mailed newsletters individually to certain prisoners, including himself. Id. at 64, 82.

Prison officials at the WSP refused to deliver the newsletters contained in the box to the intended prisoner recipients based on WPP #5.401(IV)(E)(6)(x). Id. at 64–65. This regulation provides, in relevant part, that: "[Non-privileged] [m]ail may be rejected if it contains material not intended for the addressee; but rather material intended for other parties." Id. at 178. However, the newsletters that were individually mailed were delivered to the intended prisoner recipients. Id. at 64, 82.

Parkhurst brought this action pursuant to 42 U.S.C. § 1983 against the Defendants

3

in their official and individual capacities, claiming that the refusal to deliver the newsletters contained in the box violated his rights under the First Amendment of the United States Constitution and under the Wyoming Constitution. Id. at 10–21. Parkhurst sought an order prohibiting Defendants from refusing to deliver newsletters shipped in this manner in the future and damages for the cost of reproducing and reissuing the newsletters. Id. at 20.

The district court granted summary judgment in favor of Defendants on all claims. Id. at 222. This court affirmed the district court's decision granting summary judgment to Defendants on the individual capacity claims for damages based on qualified immunity. Parkhurst I, 339 F. App'x at 862. However, this court reversed the district court's decision regarding the official capacity claims for injunctive relief and remanded the case to the district court to analyze WPP #5.401(IV)(E)(6)(x) pursuant to Turner, and to further develop the record as necessary. Id. at 860–61.

On remand, the district court ordered both parties to submit briefs regarding the issues identified in Parkhurst I. ROA, Vol. 1 at 273–74. Parkhurst requested that the district court remove its protective order on discovery and require Defendants to respond to his interrogatories, which were submitted prior to his first appeal. Id. at 275–76. The magistrate judge refused to remove the protective order because Parkhurst's interrogatories did not relate to the Turner analysis, id. at 289–97, and the district court affirmed this decision, id. at 437. Defendants submitted a brief asserting that WPP #5.401(IV)(E)(6)(x) satisfied the "legitimate penological interest test" established in

Turner.  Id. at 303–15.  To support their argument, Defendants provided copies of the

Wyoming Mail Management Manual, id. at 321–61, and WPP #5.401, id. at 363–400.  In

his response, Parkhurst did not address Defendants' assertions concerning WPP

#5.401(IV)(E)(6)(x).  See id. at 401–04.

Analyzing WPP #5.401(IV)(E)(6)(x) pursuant to Turner, the district court

concluded that the regulation "is facially valid."  Id. at 456.  Thus, the district court

granted summary judgment to Defendants on the official capacity claims for injunctive

relief and dismissed the action.  Id.  Parkhurst appeals this decision.

## II.  DISCUSSION

On appeal, Parkhurst contends that the district court improperly granted summary

judgment to Defendants on the official capacity claims for injunctive relief.  "We review

the grant of summary judgment de novo, applying the same standard as the district court .

. . ."  Wirsching v. Colorado, 360 F.3d 1191, 1195 (10th Cir. 2004).  Summary judgment

is appropriate if "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Because Parkhurst is proceeding pro se, we construe his pleadings liberally.  See Hall v.

Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

As explained in Parkhurst I, the relevant inquiry in this case is whether WPP

#5.401(IV)(E)(6)(x) is "'reasonably related to legitimate penological interests.'"  339 F.

App'x at 860 (quoting Turner, 482 U.S. at 89).  To make this determination, the Supreme

Court in Turner identified four relevant considerations: (1) "whether the governmental

objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective," Thornburgh v. Abbott, 490 U.S. 401, 414 (1989) (explaining the first Turner factor); (2) "whether there are alternative means of exercising the right that remain open to prison inmates," Turner, 482 U.S. at 90; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," id.; and (4) whether there are any "obvious, easy alternatives [that] may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns," id. at 90–91 (internal quotation marks omitted). The district court applied these factors and concluded that WPP #5.401(IV)(E)(6)(x) is reasonably related to legitimate penological interests. We agree.

First, we conclude that WPP #5.401(IV)(E)(6)(x) has a legitimate and neutral purpose and is rationally related to that objective. Defendants assert that WPP #5.401(IV)(E)(6)(x) "was promulgated to help maintain order and safety" within the WSP. ROA, Vol. 1 at 309. As explicitly stated in WPP #5.401(I)(A), the purpose of the prison mail regulatory scheme is:

> to establish a uniform set of guidelines and procedures which will be used by Wyoming Department of Corrections' correctional facilities to process incoming and outgoing inmate mail in order to decrease the likelihood of the introduction of contraband; decrease the likelihood of dissemination of information in violation of this policy; promote the safety and security of staff, inmates and the public; and promote the good order of the correctional facility.

Id. at 157 (emphasis added). In Thornburgh, the Supreme Court explained that

6

"protecting prison security . . . [is] a purpose . . . [that] is central to all other corrections goals." 490 U.S. at 415 (internal quotation marks omitted). Thus, we agree with the district court that WPP #5.401(IV)(E)(6)(x) has a legitimate purpose. Further, to assess its neutrality, this court must inquire as to "whether [a] prison regulation[] restricting inmates' [constitutional] . . . rights operated . . . without regard to the content of the expression." Id. (internal quotation marks omitted). Because WPP #5.401(IV)(E)(6)(x) applies to all non-privileged mail regardless of content, see ROA, Vol. 1 at 176, we agree with the district court that this is a neutral regulation.

Defendants assert that WPP #5.401(IV)(E)(6)(x) "'is logically and rationally connected to the legitimate interest of preserving safety and order within the prison walls.'" Aplee. Br. at 16 (quoting the district court's order at ROA, Vol. 1 at 452). In Thornburgh, the Supreme Court explained that incoming publications present particular types of security risks in prisons. 490 U.S. at 412–13. Publications targeted to general audiences, even when individual inmates solicit these materials, "reasonably may be expected to circulate among prisoners" with the potential to exacerbate tensions and cause disruptive conduct. Id. at 412. As a result, the Supreme Court recognized that "prison officials [must] be given broad discretion to prevent such disorder." Id. at 413. Defendants asserted that WPP #5.401(IV)(E)(6)(x) is intended to restrict "the inflow of unsolicited mail into the prison." ROA, Vol. 1 at 311. Defendants explained that unsolicited, bulk mailings often contain opinions that non-subscribing inmates may find inflammatory. Id. As a result, non-subscribing inmates exposed to these materials "may

7

feel compelled to act out to demonstrate their opposition to th[e unsolicited] view." Id. By restricting all bulk mailings, WPP #5.401(IV)(E)(6)(x) forecloses this source of inmate discontent. Thus, this regulation is logically and rationally related to maintaining prison safety and order.

Second, we conclude that Parkhurst had alternative means of exercising his asserted rights. As the district court noted, Parkhurst "could, and did, individually distribute several copies of the newsletter via individually and correctly addressed United States mail, including one copy to himself." Id. at 454. Further, the record establishes that, after prison officials refused to deliver the newsletters contained in the box, Parkhurst proceeded to distribute his newsletters each month in individual mailings to approximately twenty-one prison inmates. Id. at 143. Because Parkhurst could distribute his newsletters to prisoners in individual mailings, he had an alternative means of exercising his rights.

Third, accommodating Parkhurst's asserted rights and permitting delivery of bulk mailings would have an impact on prison safety and order. As previously discussed, unsolicited bulk mailings targeted to general audiences circulate throughout prisons with the potential to exacerbate tensions, lead to unrest among prisoners, and cause disruptive conduct. Beyond the safety concerns, Defendants contend that allowing bulk mailings would impose a burden on prison resources – namely prison employee time to sort and deliver the bulk mailings and facility space to store these items. Id. at 314.

Fourth, we conclude that WPP #5.401(IV)(E)(6)(x) is not an "exaggerated

response" to the legitimate penological interest of order and safety. In <u>Turner</u>, the Supreme Court explained that "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." 482 U.S. at 91. Parkhurst failed to present any alternative means of accommodating his rights.

Based on this analysis, we conclude that WPP #5.401(IV)(E)(6)(x) is facially valid and that the district court properly granted summary judgment to Defendants on the official capacity claims for injunctive relief. Parkhurst's arguments to the contrary are unavailing. Parkhurst asserts that the district court failed to adequately develop the record on remand and that genuine issues of material fact exist. In <u>Parkhurst I</u>, we remanded this case to the district court to analyze WPP #5.401(IV)(E)(6)(x) pursuant to <u>Turner</u> and to further develop the record as necessary for that analysis. By ordering the parties to submit briefs that address the issues identified in <u>Parkhurst I</u>, and by evaluating the regulation based on the <u>Turner</u> factors, the district court adequately developed the record. Further, the district court properly refused to remove its protective order on discovery because the interrogatory requests Parkhurst sought to enforce did not relate to the <u>Turner</u> analysis. <u>See</u> ROA, Vol. 1 at 201–10.

With regard to the alleged factual issues, Parkhurst has not raised a genuine issue concerning any fact material to the <u>Turner</u> analysis. Specifically, Parkhurst declined to address Defendants' assertions regarding the legitimate penological interests of WPP

9

#5.401(IV)(E)(6)(x). Instead, Parkhurst contends that the refusal to deliver the newsletters was based on the content of the newsletters rather than the asserted mail regulation. Aplt. Br. at 2. This alleged factual issue is irrelevant to the Turner analysis. Further, as noted in Parkhurst I, Parkhurst's allegations concerning Defendants' intent and motive for refusing to deliver the newsletters are "conclusory, self-serving statement[s] unsupported by any evidence." 339 F. App'x at 862. As a result, Parkhurst failed to raise a genuine issue of material fact.

### III. CONCLUSION

We AFFIRM the district court's decision. Further, we DENY Parkhurst's motion to proceed in forma pauperis and order him to immediately remit the unpaid balance due of the filing fee.[2] See 28 U.S.C. § 1915(a).

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[2] We note that, while this appeal was pending, Parkhurst accumulated his third "strike" under 28 U.S.C. § 1915(g) of the Prison Litigation Reform Act. Specifically, in Parkhurst v. Pittsburgh Paints Inc., Nos. 10-8026, 10-8027, 2010 WL 4069430 at *2 (Oct. 19, 2010), this court held that: "With the dismissal of these two appeals, Mr. Parkhurst has now earned at least three strikes under [28 U.S.C.] § 1915(g); accordingly, he may bring no more civil actions or appeals under § 1915 unless he is under imminent danger of serious physical injury." As a result, Parkhurst may not proceed in forma pauperis in any future civil filing unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

10