**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHAUN L. CHRISTENSEN,

        Plaintiff-Appellant,

v.

PARK CITY MUNICIPAL
CORPORATION, a government
entity; SHAUNA STOKES, Park City
Code Enforcement Officer; RON
KING, WAYNE YOUNG, Park City
Police Officers,

        Defendants-Appellees.

No. 07-4273

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF UTAH**
**(D.C. No. 2:06-CV-00202-TS)**

---

Submitted on the briefs.[*]

Shaun L. Christensen, appearing pro se.

Peter Stirba, Meb W. Anderson, Stirba & Associates, Salt Lake City, Utah, for
Defendants-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Before **O'BRIEN**, **BRORBY**, and **McCONNELL**, Circuit Judges.

_____

**McCONNELL**, Circuit Judge

_____

This case involves the enforcement of municipal ordinances forbidding any person, with certain exceptions, from selling goods or merchandise on the streets, in the parks, or on other city property against a visual artist selling his own work.[1]

## I. Background

According to the first amended complaint, which for purposes of this appeal of the grant of a motion to dismiss we assume to be true, Plaintiff-Appellant Shaun L. Christensen is a "visual artist" who "creates and makes prints which he displays and sells." He "generates and welcomes income from the sale of his work." R. Vol. III, Doc. 29 at 4, First Amended Complaint, ¶ 12. From time to time, Mr. Christensen has attempted to display his artwork and offer it for sale at a local park and on the streets of Park City, Utah. A local ordinance, however, forbids "any person," unless "specifically licensed" to do so, "to solicit business within any public street, sidewalk, alleyway, within the public parks, golf course, or publicly owned parking areas" in Park City without prior approval and execution of a concession contract with the City. Park

_____

[1]     This suit involves ordinances in effect in January 2004, which have since been amended.

City Ord. § 4-3-3. A related ordinance confines all "businesses" in Park City to "within a fully enclosed building." *Id.*, § 4-3-2. Local "civic organizations, such as Boy Scouts, Girl Scouts, historic preservation groups, schools, museums, not-for-profit organizations, or other charities" are exempt from licensing. *Id.*, § 4-3-16(C). It is not clear from the face of the ordinances whether they are also exempt from the prohibition on outdoor businesses, but the plaintiff's complaint alleges that they are. The City permits licensed Park City businesses, other than restaurants, to conduct outdoor sales on their own property and adjoining streets or sidewalks on a temporary basis five times a year. *Id.*, § 4-3-10.

On several occasions starting during the Winter Olympics in 2002, Mr. Christensen displayed and attempted to sell his artwork on public property in Park City, most often in Miners' Pocket Park, a small public park in the restored historic commercial district of the resort city. He was told by Park City law enforcement officers, the individual defendants here, that under city ordinances he could display, but could not sell, his work and that he could be cited and/or arrested for violating this restriction. Matters came to a head in January 2004. According to the complaint, he was approached by Officer Shauna Stokes, a city employee charged with enforcing ordinances, who again told him he was in violation of the ordinances by conducting business outdoors without a license and would be cited or arrested unless he stopped. Mr. Christensen told her that he had a First Amendment right to display and sell his artwork and refused to leave.

-3-

Officers Ron King and/or Wayne Young arrived sometime later, and after a brief discussion, they arrested Mr. Christensen. He was released from jail three days later after posting a bond. Eventually, the charges were dismissed.

Represented by counsel, Mr. Christensen filed suit in federal district court, seeking damages and declaratory relief against the officials in both their individual and their official capacities, as well as the City of Park City, claiming violations of his rights under the First Amendment, the Equal Protection Clause, and the Fourth Amendment. The defendants filed a motion to dismiss, which the district court granted in two separate orders.

The first order, dated September 15, 2006, concerns Mr. Christensen's claims against the officers in their individual capacities and their concomitant rights to qualified immunity. The district court held it "need not determine the exact parameters of the First Amendment protection for sale of expressive art work because of the vagueness of [Mr. Christensen's] allegations." R. Vol. III, Doc. 27 at 6. Specifically, the court held that "his allegations do not identify the material at issue." *Id*. at 4. Citing several cases from other jurisdictions, and relying especially on the Second Circuit's decision in *Bery v. New York*, 97 F.3d 689, 696 (2d Cir. 1996), the district court concluded that only certain types of artwork—"paintings, photographs, prints, and sculptures"—were presumptively "expressive" and so within the protection of the First Amendment. R. Vol. III, Doc. 27 at 4–7, *citing*, in addition to *Bery*, *Mastrovincenzo v. New York*, 435 F.3d

-4-

78, 94–96 (2nd Cir. 2006); *White v. City of Sparks*, 341 F. Supp.2d 1129, 1138–39 (D. Nev. 2004), and *Celli v. City of St. Augustine*, 214 F. Supp.2d 1255, 1258–59 (M.D. Fla. 2000). Because Mr. Christensen's complaint did not contain any allegations regarding the nature of his works, which might place them within one of *Bery*'s four categories of artwork, the district court found the complaint "insufficient to show that their sale is protected activity under the First Amendment." R. Vol. III, Doc 27 at 7. The court further found that it would be futile to allow Mr. Christensen to amend his complaint to adequately plead a constitutional violation because "the case law relied upon by [Mr. Christensen] was not 'clearly established' in January 2004 [the date of the incident]," *id*. at 8, thus entitling the individual defendants to qualified immunity. The court also dismissed the plaintiff's equal protection and Fourth Amendment claims, finding them derivative of the First Amendment claim. *Id*. at 11–12.

As to the claims against Park City, the district court granted the plaintiff's motion to amend his complaint. *Id*. at 13–14. In an order dated October 3, 2007, the court held that Christensen's amended complaint failed to state claims against Park City because "his allegations do not allege enough facts to show a claim of a municipal policy or custom . . . that is 'plausible on its face.'" *Id*., Doc. 45 at 4 (quotation marks omitted). Noting that the plaintiff had not contended that the

ordinances enforced against him were "unconstitutional,"[2] *id.* at 2, and thus that his claim of a constitutional violation must be based on the ordinances having been "enforce[d] . . . in an unconstitutional manner," *id.* at 4, the district court dismissed the claims against the city on the ground that the officers who enforced the ordinances were not "official policy makers." *Id.* A municipality may not be held liable under § 1983 for the acts of its employees unless they are policy makers or unless the municipality itself has adopted an unconstitutional law, custom, or policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–483, 481 n.10 (1986)

Mr. Christensen, now representing himself without assistance of counsel, appeals both orders of dismissal. We affirm the district court's holding that the individual defendants are entitled to qualified immunity because they did not violate a constitutional right that was clearly established at the time of their action. We reverse as to municipal liability against the city, and remand for determination of the proper constitutional principles and further determination of the facts if necessary.

---

[2]    As discussed below, we read the plaintiff's filings in district court as conceding that the ordinances were not unconstitutional on their face, but maintaining that they were unconstitutional as applied to the sale of protected First Amendment materials. The district court apparently mistook this as a concession that the ordinances were not unconstitutional at all.

## II. Sufficiency of the Complaint Against the Individual Officers

"This court reviews *de novo* the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), applying the same legal standard applicable in the district court." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). "In reviewing a motion to dismiss, this court must look for plausibility in the complaint. Under this standard, a complaint must include enough facts to state a claim to relief that is plausible on its face." *Id.* (citations and internal quotation marks omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The district court found it unnecessary to "determine the exact parameters of the First Amendment protection for sale of expressive art work because of the vagueness of [Mr. Christensen's] allegations." As explained above, the district court operated on the assumption, based on its reading of cases from courts in other circuits, that the sale of artwork on public streets and property is presumptively "expressive" (and so entitled to constitutional protection) if the artwork falls into one of the four categories of art identified in *Bery*: "paintings, photographs, prints, and sculptures." R. Vol. III, Doc. 27 at 4–5. The district court regarded the plaintiff's complaint too "vague" to state a claim on the ground that it failed to "identify the material at issue." *Id*., at 4, 6. The court also ruled that the individual officers were in any event entitled to qualified immunity

-7-

because the constitutional violation, if any, was not clearly established at the time of their actions. Because this alternative ground would preclude a finding of liability against the officers even if the plaintiff amended his complaint to eliminate its vagueness, the court denied leave to amend and dismissed the suit against the officers.

We do not agree with the district court's first rationale for dismissal, the vagueness of the complaint. The complaint alleged that Mr. Christensen "is a visual artist. His art work has been displayed at various art festivals, galleries, shows, etc. in Utah." R. Vol. II, Doc. 3 at 4, Complaint, ¶ 12. If the First Amendment principles set forth by the Second Circuit in *Bery v. New York* apply, as the district court seemed to assume, we are inclined to think the allegation in ¶ 12 is sufficient, even without further specification of the "material at issue." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated. Even after *Twombly*, the factual allegations need only contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). As we observed in *Robbins*, "plausibility" in the context of determining the sufficiency of a complaint "refer[s] to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" 519 F.3d at 1247 (*quoting Twombly*, 127 S. Ct. at 1974). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

Mr. Christensen's complaint provides sufficient factual material that the defendants must know the actual grounds of the complaint against them, and if he is able to prove the allegations, he plausibly has a claim for relief, at least under the constitutional theory assumed by the district court. There is no need to know, as the district court thought, anything more specific about the nature of Mr. Christensen's creations. That he is a "visual artist" whose "art work has been displayed at various art festivals, galleries, shows, etc. in Utah" is enough to demonstrate that he was plausibly within the reach of *Bery*. To be sure, further development of the facts on discovery might possibly disclose that his art work is unexpressive, perhaps because it is not "original" (as the defendants suggest in their appellate brief), but the alleged fact that his work has been displayed at festivals, galleries, and shows, as well as Mr. Christensen's self-description as a "visual artist," makes the complaint at least plausible under *Bery*.

But this assumes that *Bery*, or some close equivalent, is an accurate statement of the law. The district court did not so hold, finding it unnecessary to

determine the "exact parameters of First Amendment protection" because of the vagueness of the complaint. R. Vol. III, Doc. 27 at 6. Until very recently, in a case of qualified immunity, district and appellate courts were required to resolve the issue of law before proceeding to whether it was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It would have been very difficult to do that here. The parties do not brief whether *Bery* is a correct statement of the law, but for the most part appear to agree for purposes of this appeal that persons selling "original" artwork are entitled to do so in traditional public fora, notwithstanding generally applicable ordinances forbidding unlicensed sales of any material on public property. Compare Appellant's Br. 7 ("an artist's sale of his original artwork constitutes speech protected under the First Amendment") *with* Appellees' Br. 14-15 (relying on a Ninth Circuit opinion which, according to Appellees, "was expressly careful in limiting its holding to *original* art work"). It may be, however, that restrictions on sales of expressive materials are properly analyzed as restrictions on expressive conduct rather than speech, and thus subject to the relaxed constitutional standard set forth in *United States v. O'Brien*, 391 U.S. 367 (1968); *see Heideman v S. Salt Lake City*, 348 F.3d 1182, 1192 (10th Cir. 2003).[3] If so, this record is wholly inadequate for us to determine

---

[3]     In *O'Brien*, the Court set out a four part test for determining whether a government regulation of conduct is justified: "[1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the

(continued...)

whether the defendants violated Mr. Christensen's constitutional rights. Among other things, we have no basis on which to evaluate the governmental purposes served by the regulation or the alternative channels of communication available to Mr. Christensen. On the other hand, it may be that the sale even of *unoriginal* art work could be expressive and therefore protected, assuming sales of expressive materials enjoy this kind of constitutional protection in the first place. If that is the proper constitutional framework, determining whether Mr. Christensen's rights were abridged would require analysis of the record without the benefit of relevant briefing by the parties. Indeed, it is possible that some other constitutional analysis applies in lieu of any that we, or the parties, have discussed.

It would serve no practical purpose for us to delve any deeper into the First Amendment principles applicable to this case. The district court dismissed the complaint on vagueness grounds, which we have concluded we must reverse. The defendants have not argued an alternative ground for affirmance and the record is not sufficient for us to apply the *O'Brien* test. In the next section of this opinion, we will conclude that the right asserted by Mr. Christensen was not clearly

---

[3](...continued)
suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. This test applies "to generally applicable regulations of both non-expressive and expressive conduct, not targeting or singling out expressive conduct." *Heideman*, 348 F.3d at 1193.

established, which obviates any need for a remand with respect to the individual defendants. Thus, further analysis of the merits would have no actual consequence for the litigants.

Fortunately, very recently, while this opinion was being prepared, the Supreme Court jettisoned its prior holding that courts in qualified immunity cases must determine whether the plaintiff's constitutional rights were violated before turning to whether the asserted right was clearly established. In *Pearson v. Callahan*, — S. Ct. —, 2009 WL 128768 (2009), the Court stated:

> while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id*. at *9.

This case is a prime example of when the discretion to avoid the first half of the *Saucier* two-step should be exercised. To attempt to answer *Saucier*'s first question would require us to opine on an open and significant issue of constitutional law on an inadequate record, without benefit either of a district court holding or of relevant briefing, even though the issue would have no effect on the outcome of the case. We therefore exercise our newfound discretion and move on.

### III. Clearly Established Law

The district court also held that the individual defendants—Officers Stokes, King, and Young—are entitled to qualified immunity from the damages action against them because the plaintiff is unable to show that the constitutional right they allegedly violated was "clearly established" at the time of their actions. A right is clearly established when, at the time of the alleged violation,

> the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right. A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.

*Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and quotation marks omitted). A law enforcement officer's "reli[ance] on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question" may absolve the officer from knowing that his conduct was unlawful, except when the statute or ordinance is so "'patently violative of fundamental constitutional principles,'" that a reasonable officer could not believe it was permissible to enforce it. *Lawrence v. Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005), *quoting Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251–52, 1253 n. 33. *Accord Grossman v. City of Portland*, 33 F.3d 1200, 1209–10 (9th Cir. 1994). Police officers are not constitutional lawyers, and they should not have to fear personal damages liability when they enforce the plain terms of an ordinance that

-13-

has not been challenged in court, let alone overturned, unless its unconstitutionality is patent.

There is no case law from the Supreme Court or the Tenth Circuit establishing—clearly or otherwise—that the conduct complained of by Mr. Christensen was unconstitutional in 2004, or even today. To be sure, the plaintiff cites a handful of decisions from courts in other circuits that lend support to his claim. Even setting aside the fact that two of the cases he cites post-date the incident, the cited decisions have not been so broadly accepted as to be considered the "weight of authority." Indeed, the decisions stand for somewhat different interpretations of the First Amendment as applied to sales of artwork on public property. We think it is too much to expect that law enforcement officers, however reasonable or well-informed, would have known in 2004 that it is unconstitutional to enforce a general ordinance prohibiting unlicensed outdoor business activity on public property against an artist wishing to sell his wares in a park.

We therefore affirm the district court's holding that the claims against the individual officers must dismissed on qualified immunity grounds.

### IV. Municipal Liability

The defense of qualified immunity is not available to a municipality such as Park City. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). We therefore must address the district court's second order, filed October 3, 2007, which

-14-

dismissed Mr. Christensen's claims against Park City. The doctrine of *respondeat superior* cannot be employed to hold governmental entities liable under § 1983 for the constitutional torts of their employees. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978). But a municipality can be liable when enforcement of its policies causes a constitutional deprivation. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. Thus, one way to establish a claim is to allege that enforcement of an express policy made by lawmakers causes a constitutional deprivation. "Local governing bodies, therefore, can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690.

We conclude that Mr. Christensen's complaint does just that. It alleges that the individual defendants enforced Park City ordinances that, he contends, are unconstitutional as applied in his case. As city ordinances, there is no question that they reflect the "official policy" of the municipality. The complaint alleges that Officer Stokes is a Park City employee "charged with the duty and responsibility of enforcing Park City ordinances dealing with code violations and instituting civil and/or criminal action against individuals who violate ordinances

-15-

of Park City," and that the other officer defendants acted at her "request, direction, urging and insistence." R. Vol. III, Doc 29 at 3, 5, First Amended Complaint, ¶¶ 6, 24. Mr. Christensen does not allege that the officers were acting at their own discretion or initiative. They were not freelancing; they were enforcing a city ordinance in accordance with its terms. To be sure, Mr. Christensen also states that Officer Stokes "personally initiated and participated in the action against him," Pl.'s Resp. To Defs' Motion to Dismiss, Doc. 19 at 15, but that is generally true when law enforcement officers arrest individuals for violations of the law. Officer Stokes's participation is not a separate and intervening cause such that the municipality is absolved of responsibility for its ordinance. If it turns out that the relevant ordinances are unconstitutional, whether on their face or as applied to Mr. Christensen, the liability falls on the city, not on the officers personally.

Park City defends the district court's order on the ground that the complaint alleges only unconstitutional enforcement of an admittedly constitutional ordinance. It cites the Eighth Circuit's holding that "a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 392 (8th Cir. 2007) (en banc). We do not agree with the City's argument, or with its suggested application of *Szabla*.

First, the City errs in characterizing the plaintiff's position as an "admi[ssion]" that "the Ordinances are constitutional." Appellees' Br. 23. The plaintiff argues, quite clearly, that "[t]he challenged Park City ordinances and regulatory scheme which prohibit all sales of art by street artists, like the plaintiff, are not narrowly tailored and violate the First Amendment." Pl.'s Resp. To Defs' Motion to Dismiss, Doc. 19, at 5. To be specific, "Park City's ordinances *as applied* violate the constitutional rights of plaintiff to display and sell his art work on the public sidewalks and in the city parks of Park City." *Id.* at 1 (emphasis added). This is sufficient to establish a claim of municipal liability. If a governmental entity makes and enforces a law that is unconstitutional as applied, it may be subject to liability under § 1983. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004).

The Eighth Circuit case cited by Park City, *Szabla*, is not to the contrary. *Szabla* was an excessive force claim arising from an incident where a law enforcement officer, exercising discretion given him by city ordinances, instructed a police dog to search for and to bite the plaintiff. The litigated issue was whether a municipality is liable under § 1983 when a police officer enforces a constitutional ordinance in an unconstitutional manner. In that case, however, it was the discretionary decision of the officer to give the dog the order to bite that was the source of the plaintiff's injury. No city ordinance required that. Here, by contrast, Officers Stokes, King, and Young were doing no more than to enforce

-17-

the Park City ordinances according to their terms.  The ordinances prohibit outdoor sales on city property, even by street artists, and the officers simply enforced the ordinances.  If they had done so by assaulting and beating Mr. Christensen, slashing his artwork, or unleashing a dog to bite him (to name a few possible examples of police misconduct), the municipality would not be liable unless it had affirmatively sanctioned that conduct, some other municipal policy (such as a failure to train) was causally responsible, or the decision to inflict the constitutional injury was made by an official policymaker.  *Szabla*, 486 F.3d at 390–91.  The injury to Mr. Christensen, however, was caused by a straightforward enforcement of the ordinances, and not by any additional discretionary actions by the officers.  "[I]t is when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.  Accordingly, if the ordinances are unconstitutional as applied, the City is liable.

The district court did not reach the question whether the First Amended Complaint states a First Amendment claim upon which relief may be granted.  Because the district court did not reach the constitutional merits, we will not, either.  We leave these questions to be litigated on remand.

## V. Other Constitutional Claims

Mr. Christensen's amended complaint also alleges that Park City and the individual officers violated his equal protection and Fourth Amendment rights. He raised these arguments both in the district court and in his appellate briefs. The district court noted that these claims were "premised on an allegation that Plaintiff was engaged in protected speech." R. Vol. III, Doc. 27 at 11. Mr. Christensen's equal protection claim depended on the theory that the Park City ordinances discriminate among speakers with respect to the constitutional right of freedom of speech. His Fourth Amendment claim was premised on the theory that it was unreasonable to arrest Mr. Christensen for an exercise of his First Amendment rights. Because the free speech right "was not clearly established regarding Plaintiff's activities," the district court concluded that the individual defendants were similarly entitled to qualified immunity on the derivative equal protection and Fourth Amendment claims as well. *Id.* at 12. We agree. If the defendant law enforcement officers were not on notice that their enforcement of the ordinances violated the Free Speech Clause, they could not have been on notice that they were discriminating among speakers with respect to free speech rights or that they were arresting Mr. Christensen for exercise of his First Amendment rights. We therefore affirm the district court's order in favor of the individual defendants on qualified immunity grounds.

In his pro se appellate brief, the plaintiff adds a third derivative claim against the individual defendants, this one based on due process. Because this claim was not raised in district court, it is not properly before us on appeal.

Because the district court's sole rationale for dismissing the equal protection and Fourth Amendment claims was based on qualified immunity, which does not apply to municipalities, and Park City does not suggest any alternative ground for affirmance, we reverse the dismissal of Mr. Christensen's equal protection and Fourth Amendment claims against the City.

## *VI. Conclusion*

The order of the district court dismissing Mr. Christensen's claims against Officers Stokes, King, and Young in their individual capacities is AFFIRMED. The order of the district court dismissing Mr. Christensen's claims against Park City is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.