FILED
United States Court of Appeals
Tenth Circuit

June 4, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

GROVER DELMAR WIGLEY;
LORAINE WIGLEY; ELIZABETH
MICHELLE WIGLEY; ALISA
DELARA, as natural parent and next
friend of S.D., a minor child,

        Plaintiffs - Appellants,

v.

CITY OF ALBUQUERQUE;
JOHN/JANE DOES, 1-12, Albuquerque
Police Officers; JAMES WILLIAMSON,
in his individual and official capacity,

        Defendants - Appellees,

and

COUNTY OF BERNALILLO; LOUIZ
FUNES, in his individual and official
capacity; GERALD KOPPMAN, in his
official and individual capacity;
JOHN/JANE DOES, Bernalillo County
Sheriff's Office,

        Defendants.

No. 13-2156
(D.C. No. 1:12-CV-00595-PJK-RHS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

(continued)

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Plaintiffs appeal the district court's orders granting summary judgment to James Williamson on the ground of qualified immunity and dismissing claims of municipal liability against the City of Albuquerque, New Mexico. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

The Bernalillo County, New Mexico Sheriff's Department (BCSD) obtained a search warrant for the home of plaintiffs Grover Delmar Wigley (Del) and Loraine Wigley. The warrant was signed by a New Mexico state judge, was issued to the BCSD, and authorized a search of the Wigleys' residence for a weapon, ammunition, and law enforcement gear that had been stolen from a law enforcement officer's vehicle. BCSD officer Luiz Funes prepared the supporting affidavit, which was incorporated into the warrant and identified two suspects in the robbery: Nathan Talamante and Matthew Otero. The affidavit reiterated information Officer Funes received from a confidential source (CS)—that Mr. Otero had told his cousin, "JR," to take the gun to JR's house; that JR lived at the Wigleys' address; and that the

_____

estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

stolen weapon and gear (police vests, a shield, and a helmet) were still at the Wigleys' address, but the gun had been taken to the suspects' house.

Appellee James Williamson was one of twenty-two officers from the Albuquerque Police Department (APD) SWAT team who assisted two or three BCSD officers in executing the warrant. He had no role in preparing the affidavit or securing the warrant, and he was briefed that the search included stolen guns and body armor. As the SWAT team approached the house, a car pulled into the driveway and the garage door opened. Three of the plaintiffs were in the car: Del; his adult daughter, Michelle Wigley; and his five-year-old grandchild, "S.D." They were ordered to get out of the car, and Officer Williamson handcuffed Del in flex cuffs. Another SWAT team member, Scott Smiel, handcuffed Michelle with zip-tie cuffs. Those cuffs broke twice, and eventually she was put in metal handcuffs. Officers Williamson and Smiel escorted Del and Michelle down the street and placed them in the back of an APD patrol car. Officer Williamson then carried S.D. to the car and put S.D. in with Del and Michelle. Both officers returned to their positions in front of the house.

Another SWAT officer ordered the fourth plaintiff, Loraine Wigley, who was alone in the house, to come out, which she did. She was not handcuffed. Officer Williamson brought her to the car holding the other plaintiffs, and she stood beside it. SWAT officer Drew Bader asked the adult plaintiffs whether they knew Mr. Otero or JR and whether there was any stolen property in the house. After they responded no

in both respects, Officer Bader told SWAT Sergeant Fox that plaintiffs "were not involved in the Sheriff's Department's case." Aplt. App. at 110. Sergeant Fox then authorized Officer Bader and his team to enter and secure the house.

Meanwhile, another car approached the house but was stopped by police some distance away. In it were S.D.'s parents and his younger sibling. They could see Del and Michelle being walked to the patrol car but could not see S.D. Despite repeated protests and requests, they were prevented from going any closer to the house or having any contact with S.D., and they were denied information regarding S.D.'s whereabouts. About forty-five minutes later, a SWAT officer told S.D.'s father that "'we are obviously at the wrong place.'" *Id.* at 105.

The search uncovered none of the items or people identified in the warrant. After approximately sixty to eighty minutes, the SWAT team was released, and Officer Smiel retrieved his metal handcuffs and placed flex cuffs on Michelle. A BCSD officer soon approached and stated that he was releasing the scene. Del, Michelle, and S.D. were then let out of the patrol car. Del was uncuffed, and Officer Smiel returned with scissors and cut off Michelle's flex cuffs, which he had allegedly placed on her too tightly. After plaintiffs were released from the patrol car, a BCSD sergeant told S.D.'s father, "'we screwed up. I knew the second we got here we were at the wrong place. You can just tell. You know when gang members live somewhere, and this is not the place.'" *Id.* at 106. Ultimately, it was determined that the CS had incorrectly identified the Wigleys' house as JR's.

Plaintiffs then filed a civil action, asserting claims under 42 U.S.C. § 1983 that defendants used excessive force and subjected them to an unreasonable search and seizure in violation of the Fourth Amendment. They also asserted state-law claims. Officer Williamson moved for summary judgment based on qualified immunity, and the City of Albuquerque sought to dismiss the claims against it.

The district court granted Officer Williamson's motion and declined to exercise supplemental jurisdiction over the state-law claims against him. Noting his limited role in detaining the plaintiffs, the court concluded that Officer Williamson was entitled to rely in good faith on the search warrant and that the safety risk inherent in the search for a weapon justified the detention. The court observed that under *Michigan v. Summers*, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981) (footnote omitted). The district court then likened this case to *Muehler v. Mena*, where the Supreme Court applied *Summers* and concluded that it was a reasonable use of force to handcuff multiple occupants of a residence for two-to-three hours during a search for weapons and evidence of gang membership authorized by a warrant. *See* 544 U.S. 93, 98-101 (2005). The district court further concluded that no facts suggested that Officer Williamson's presence during the re-handcuffing of Michelle or while Del, Michelle, and S.D. were uncomfortably detained in the back of the patrol car for over an hour produced more than a *de minimis* physical or emotional

injury, as required for an excessive-force claim under *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc).

The district court also rejected plaintiffs' argument that disputed factual issues regarding the validity of the warrant precluded summary judgment and that they should be allowed to depose Officer Williamson as to whether he or the other officers read the warrant and affidavit. The court noted that under *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), qualified immunity allows for mistakes, and that officers are not required "to evaluate on an ad hoc basis the circumstances surrounding the execution of the warrant each and every time they wish to detain the occupant of the place to be searched," *United States v. Ritchie*, 35 F.3d 1477, 1482 (10th Cir. 1994). The court further relied on *Jenkins v. Wood*, 81 F.3d 988, 995-96 (10th Cir. 1996), for the principle that an assisting officer like Officer Williamson is entitled to rely in good faith that the warrant is valid. The court concluded that Officer Williamson's reliance was reasonable under the circumstances and therefore the validity of the warrant was immaterial.

In a separate decision, the district court granted the City's motion to dismiss on the ground that it could not be held liable absent a constitutional violation by Officer Williamson, who was the only City employee named in the complaint. This appeal followed.

## II. DISCUSSION

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (internal quotation marks omitted). Our review of the qualified-immunity decision is de novo, and we construe the facts in the light most favorable to the plaintiffs. *See id.* at 1311-12. We also review the dismissal of the claims against the City de novo. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1275 (10th Cir. 2009). Having done so, we conclude that the district court's decisions are sound, and we are unpersuaded by plaintiffs' arguments to the contrary.

Plaintiffs first contend that Officer Williamson should have read the affidavit, and that if he had done so, he would have known that the gun was not at the Wigleys' address and that detaining plaintiffs was unnecessary. But plaintiffs have not pointed to, nor are we aware of, any law clearly establishing that Officer Williamson, as one of the many SWAT team members assisting in the execution of the warrant, and who was briefed that the search included stolen guns[1] and body armor, had a duty to read

---

[1] Plaintiffs claim defendants misrepresent the record by stating that the warrant authorized a search for multiple weapons whereas the warrant mentioned only a single weapon. We note defendants' mistake and have considered the affidavit and warrant on their specific terms. Plaintiffs make several other claims of record misrepresentation, *see* Pls.' Reply Br. at 5-6, but our disposition of this appeal renders their complaints immaterial or irrelevant.

the warrant or affidavit and assess whether handcuffed detention was justified. Indeed, the law does not require police officers to second-guess a judicial determination that probable cause supports a search warrant. *See United States v. Leon*, 468 U.S. 897, 913-14 (1984) (according "great deference to a magistrate's determination" that an affidavit establishes probable cause because "the detached scrutiny of a neutral magistrate . . . is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime" (internal quotation marks omitted)); *Ritchie*, 35 F.3d at 1482 (providing that officers are not required to evaluate circumstances "each and every time they wish to detain the occupant of the place to be searched" pursuant to warrant).

Nor have plaintiffs rebutted "the evidentiary presumption that when a police officer carries out a search based on a warrant it is a good faith search." *Jenkins*, 81 F.3d at 995-96. The warrant in this case permitted a search for a weapon. Thus, Officer Williamson was entitled to rely on it to detain plaintiffs, two in handcuffs, even though the affidavit suggested that the gun had been moved to another location. *See Muehler*, 544 U.S. at 100 (stating that the "safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs," and "the need to detain multiple occupants made the use of handcuffs all the more reasonable"); *Summers*, 452 U.S. at 702 (recognizing that a handcuffed detention of occupants during a proper search pursuant to warrant is substantially justified by a

legitimate law enforcement interest in "minimizing the risk of harm to the officers").

That it turned out there was no gun in the house and the CS had identified the wrong house does not expose Officer Williamson to liability for his role in handcuffing Del and escorting plaintiffs to the patrol car.

Plaintiffs next attempt to align this case with *Harman v. Pollock*, 446 F.3d 1069, 1086 (10th Cir. 2006), where we distinguished *Summers* and *Muehler* on the ground that the validity of the warrant was not at issue in those cases. However, the validity in *Harman* concerned whether the warrant covered an attached-garage residence with a separate street address, and we concluded that the officers reasonably entered that residence. *See id.* at 1080-82. That is not the case here—the warrant specified the Wigleys' address—and in any event, as explained above, the validity of the warrant's scope with regard to the weapon is immaterial to Officer Williamson's qualified immunity.

Plaintiffs further contend that under *Harman*, any authority to initially detain them ended as soon as the officers knew or reasonably should have known that the warrant was deficient. *See id.* at 1086 (stating that an officer's authority to detain pursuant to a search warrant "terminates when an officer knows or reasonably should know that the warrant is overbroad" (internal quotation marks omitted)). They also rely on a statement from Justice Kennedy's concurrence in *Muehler* that a restraint should "be removed if, at any point during the search, it would be readily apparent to any objectively reasonable officer that removing the handcuffs would not

- 9 -

compromise the officers' safety or risk interference or substantial delay in the execution of the search." 544 U.S. at 103. They then posit that summary judgment was inappropriate because there are disputed material facts as to the reasonableness of the prolonged detention and when the officers' authority terminated.

As evidenced by plaintiffs' repeated references to "officers" (plural), their argument overlooks that this appeal concerns only Officer Williamson, that he was the only City employee named in the complaint, and that he played a limited role in the execution of the warrant.[2] Officer Williamson's undisputed estimate was that his initial interaction with plaintiffs lasted only ten minutes. He handcuffed one of them and escorted all four of them to the patrol car. Officer Williamson returned to plaintiffs only at the end of the search, at least an hour later, and was present for, but did not conduct, the re-handcuffing of Michelle. Nothing suggests that he had any role in determining how long to detain plaintiffs. Nor is there anything to suggest that Officer Bader's comment to Sergeant Fox or the comments made by other officers to S.D.'s father were ever communicated to Officer Williamson such that he should have taken some action to end plaintiffs' detention sooner.[3] Hence, we fail to

---

[2] Although plaintiffs named twelve "John and/or Jane Doe" City defendants, those defendants did not move for summary judgment, nor did the district court grant them summary judgment. In fact, plaintiffs withdrew a motion to amend their complaint to add other City defendants, including Officer Smiel. We therefore reject the notion that the conduct of other officers is at issue in this appeal.

[3] Although the parties refer to a rebuttable presumption of communication among police officers, that presumption applies when officers are working closely together at a scene. *See United States v. Shareef*, 100 F.3d 1491, 1504 (10th Cir.

(continued)

- 10 -

see any genuinely disputed issues of material fact regarding the length of time plaintiffs were detained that precludes summary judgment on Officer Williamson's qualified-immunity defense. *Harman* therefore does not control this case, and Officer Williamson did not violate the principle voiced by Justice Kennedy in his *Muehler* concurrence.

Lacking a constitutional violation by Officer Williamson, the only City employee named in the complaint, the district court properly dismissed the claims against the City of Albuquerque. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

_____
1996).  Here, Williamson was one of twenty-two SWAT team members, and there is no indication he had close interaction with any of the officers who made the comments about being in the wrong place or that he had any involvement in deciding how long to hold plaintiffs.  We are therefore unwilling to apply the presumption.