**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALLEN GALBREATH

    Plaintiff - Appellant,

v.

THE CITY OF OKLAHOMA CITY;
KEVIN PARTON,

    Defendants - Appellees.

No. 12-6295
(D.C. No. 5:11-CV-01336-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH, MATHESON,** and **BACHARACH,** Circuit Judges.

---

Allen Galbreath was arrested for disorderly conduct while performing his morning

ballet exercises in an Oklahoma City park. He brought a civil rights action under 42

U.S.C. § 1983 against the arresting officer and the City, alleging the arrest lacked

probable cause and the municipal ordinance was unconstitutionally vague. Each

defendant moved for summary judgment, and Mr. Galbreath moved for declaratory

judgment on his claims against the City. The district court denied Mr. Galbreath's

motion and granted both defendants' motions, holding (1) the arresting officer had

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

qualified immunity and (2) the disorderly conduct ordinance was not unconstitutionally vague as applied to Mr. Galbreath. Mr. Galbreath now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the first holding. As to the second, we reverse and remand.

## I. BACKGROUND

### A. *Factual History*[1]

Mr. Galbreath is a "former dancer with the Oklahoma Ballet." Aplt. Appx., Vol. I at 177. Because of a debilitating hip condition, Mr. Galbreath regularly performed ballet exercises as a form of "physical therapy" at Goodholm Park in Oklahoma City to improve his ambulatory function. *Id.* at 124, 177 n.1. In June 2010, Mr. Galbreath went to Goodholm Park to perform his morning physical therapy exercises. He wore "[o]versized gray pants, a fitted gray T-shirt, . . . a red bandanna," and "high-heel shoe[s]." *Id.* at 129. He also carried a walking cane roughly 3 feet in length and a large red handbag.

Upon arriving at the park, Mr. Galbreath began singing and performing dance moves using his cane. Shortly thereafter, Mr. Galbreath fielded a call from a friend and began laughing loudly. *See id.* at 133, 288. A woman called 911 to report she was at the

---

[1] Because this case comes to us from summary judgment, we recite the facts "in the light most favorable to" the non-moving party, Mr. Galbreath, "resolving all factual disputes and reasonable inferences" in his favor. *Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013).

park with her grandchildren and concerned about a "man in high heels with a big stick and a purse." *Id.* at 152 (recording of 911 call).[2]

Officer Kevin Parton of the Oklahoma City Police Department responded to the 911 call. After arriving, he found Mr. Galbreath wearing high heels and carrying a cane. When the officer asked Mr. Galbreath what he was doing at the park, Mr. Galbreath explained that he was doing his "morning exercises" and demonstrated a short choreographed ballet sequence using his walking cane. *Id.* at 140, 288.

According to Mr. Galbreath, Officer Parton "grabbed" Mr. Galbreath's arm, twisted it up "above [his] head to where it hurt" and escorted Mr. Galbreath to the police car. *Id.* at 134. Officer Parton searched Mr. Galbreath's red bag and found an air pistol. After handcuffing Mr. Galbreath as a "precautionary measure" and running a warrant check, Officer Parton learned that Mr. Galbreath had no outstanding arrest warrants or any criminal background. *Id.* at 160, 179.

Officer Parton recounted that, save for two tennis players, the other people in the park had gathered by the playground equipment and were no longer involved in "open play." *Id.* at 164.[3] He presumed they were afraid of Mr. Galbreath. *See id.* Officer Parton's arrest report, however, did not reflect this observation. Rather, it merely

---

[2] Although the recording of the 911 call is garbled, the transcript states the caller thought Mr. Galbreath was "drunk." Aplt. Appx., Vol. I at 272.

[3] We draw this statement from Officer Parton's response to Mr. Galbreath's interrogatories during the discovery conducted in the district court. *See* Aplt. Appx., Vol. I at 161-68.

suggested he observed "several adult women accompanied by approx[imately] 8 to 10 children," who "were playing on the playground equipment," roughly "20 yards from" Mr. Galbreath's location. *Id.* at 160. Nothing in the arrest report suggests Officer Parton spoke with any of these individuals to confirm whether they were in fact alarmed, and the 911 caller testified in her deposition that she had never met Officer Parton before. *See id.* at 157. And although Officer Parton asserted in his arrest report that he asked Mr. Galbreath if he had a "legit[i]mate purpose" for being in the park, *id.* at 160, Mr. Galbreath disputes this fact.

Officer Parton arrested Mr. Galbreath for "disorderly conduct" under Oklahoma City Municipal Code § 30-81(b), which defines the offense as "caus[ing] public alarm without justification." Although the City initially charged Mr. Galbreath under the ordinance, it later dismissed the charge.

## B. *Procedural History*

On October 12, 2011, Mr. Galbreath sued Officer Parton and Oklahoma City under 42 U.S.C. § 1983 in Oklahoma state court, alleging several violations of federal law.[4] The defendants removed the case to the United States District Court for the Western District of Oklahoma. Mr. Galbreath filed an amended complaint in which he argued (1) Officer Parton arrested him without probable cause and (2) the City's disorderly conduct ordinance was unconstitutionally vague in violation of the Due

---

[4] Mr. Galbreath also asserted a claim under the Oklahoma Governmental Tort Claims Act, but it is not relevant to this appeal. *See* Aplt. Appx., Vol. I at 76, 241, 369.

Process Clause of the Fourteenth Amendment.[5]  The complaint sought damages, declaratory relief, and an injunction prohibiting the City from enforcing § 30-81.

The City unsuccessfully moved to dismiss Mr. Galbreath's claims for injunctive relief.  After discovery, Officer Parton moved for summary judgment on qualified immunity grounds and the City moved for summary judgment on Mr. Galbreath's municipal liability claims.  Mr. Galbreath moved for declaratory judgment on his claims against the City.

The court denied Mr. Galbreath's motion and granted summary judgment in favor of the defendants.  It first determined that Mr. Galbreath lacked standing to seek prospective relief—either declaratory or injunctive—because he did not allege a credible threat of future prosecution under the ordinance.  The court therefore denied Mr. Galbreath's motion for declaratory judgment on these claims and dismissed them with prejudice.

The district court next granted Officer Parton's request for qualified immunity, concluding he had probable cause to arrest Mr. Galbreath and any violation of Mr. Galbreath's rights was not otherwise clearly established.

---

[5] In his amended complaint, Mr. Galbreath also alleged (1) Officer Parton violated the First Amendment by arresting Mr. Galbreath for engaging in protected expression and (2) the City's ordinance violates the First Amendment because of its overbreadth.  The district court determined Mr. Galbreath "confessed" the first claim by failing to rebut Officer Parton's motion on that issue and affirmatively abandoned the second in his response to the City's motion for summary judgment.  *See* Aplt. Appx., Vol. I at 365-66.

Finally, the court granted summary judgment in the City's favor on Mr. Galbreath's remaining void-for-vagueness claim for damages and retrospective declaratory relief. The court first concluded he could not bring a facial vagueness challenge because he was not seeking pre-enforcement review and failed to allege the ordinance threatened constitutionally protected activity. Left to address an as-applied due process vagueness claim, the district court determined Mr. Galbreath had sufficient notice that his behavior could have fallen within the ordinance's description of prohibited conduct.

Accordingly, the district court dismissed Mr. Galbreath's case. Mr. Galbreath now appeals.

## II. **DISCUSSION**

On appeal, Mr. Galbreath has abandoned most of his claims from the district court.[6] In his opening brief, Mr. Galbreath contends the district court erred by (A) granting Officer Parton qualified immunity on his Fourth Amendment claim and (B) concluding that Oklahoma City's disorderly conduct statute was not void-for-

---

[6] As noted above, *see supra* note 5, Mr. Galbreath withdrew his First Amendment overbreadth claim in the summary judgment briefing before the district court. *See* Aplt. Appx., Vol. I at 312. Additionally, the district court determined that Mr. Galbreath conceded his First Amendment free expression claim by failing to respond to Officer Parton's motion on that issue. *See id.* at 365 & n.22. Mr. Galbreath does not press either argument on appeal. Nor does he challenge the district court's rejection of his plea for prospective relief. *See* Oral Arg. Recording (6:14-6:20). We therefore do not consider any of these claims.

vagueness in violation of the Due Process Clause of the Fourteenth Amendment.  We

address these arguments in turn after discussing our standard of review.

We review a district court's grant of summary judgment de novo, "using the same

standard applied by the district court pursuant to Fed. R. Civ. P. 56(a)."  *Cillo v. City of*

*Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013); *see also Tabor v. Hilti, Inc.*, 703

F.3d 1206, 1215 (10th Cir. 2013).  We must "view facts in the light most favorable to"

the non-moving party, Mr. Galbreath, "resolving all factual disputes and reasonable

inferences" in his favor.  *Cillo*, 739 F.3d at 461.  Summary judgment shall be granted if

"there is no genuine dispute as to any material fact" and the moving party is "entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Cillo*, 739 F.3d at 461.  "A

fact is material if, under governing law, it could [affect] the outcome of the lawsuit."

*Cillo*, 739 F.3d at 461 (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184,

1190 (10th Cir. 2000)).  A factual dispute is "genuine if a rational jury could find in favor

of the nonmoving party on the evidence presented."  *Id.* (quotations omitted).

A.  ***Qualified Immunity for Officer Parton on the Fourth Amendment Claim***

At summary judgment, courts must grant qualified immunity unless the plaintiff

meets a two-part burden to "show (1) a reasonable jury could find facts supporting a

violation of a constitutional right, which (2) was clearly established at the time of the

defendant's conduct."  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014);

*see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (asking whether "a violation could be

made out on a favorable view of the parties' submissions"), *receded from on other*

*grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Courts may "exercise their sound discretion in deciding which of the two" steps of the "qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Because Mr. Galbreath fails to meet the second step, we need not and do not reach the first. His opening brief makes no mention of clearly established law, and at oral argument, his counsel acknowledged that he cannot point to any clearly established federal law giving Officer Parton notice that the arrest was unconstitutional. *See* Oral Arg. Recording (10:10-11:05). Indeed, when asked whether he had "just conceded that the law wasn't clearly established," Mr. Galbreath's counsel responded, "Yes Your Honor." *Id.* (10:10-10:23). Mr. Galbreath therefore fails to meet his burden to show that Officer Parton's actions violated clearly established law.[7]

We therefore proceed to Mr. Galbreath's void-for-vagueness claim against the City.

### B. *Void-for-Vagueness Claim against the City*

Mr. Galbreath's remaining claim seeks to hold Oklahoma City liable because the disorderly conduct ordinance was void for vagueness as applied. In his amended complaint, Mr. Galbreath requested damages as well as a "declaration that Oklahoma

---

[7] In reaching this conclusion, we express no opinion on whether Mr. Galbreath has satisfied the first step of the qualified immunity inquiry—that a reasonable jury could find Officer Parton lacked probable cause to arrest Mr. Galbreath for disorderly conduct.

City Ordinance 30-81 is unconstitutionally void for vagueness on its face and as applied by [Officer] Parton in violation of the Due Process Clause." Aplt. Appx., Vol. I at 37. At oral argument, however, Mr. Galbreath's counsel abandoned his challenge to the ordinance's facial validity. *See* Oral Arg. Recording (4:00-4:07, 6:07-6:28).

Our consideration of Mr. Galbreath's void-for-vagueness claim is therefore limited to (1) whether the City may be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for an as-applied violation, and if so, (2) whether the district court erred in granting summary judgment to the City on the merits. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (resolving § 1983 claims against municipalities requires consideration of whether "the city is responsible" for harm "caused by a constitutional violation"). Mindful that Mr. Galbreath need only raise a genuine dispute of material fact to survive summary judgment, we answer both questions in the affirmative.[8]

1. **Municipal Liability**

The City argues "even if the ordinance was vague as applied to [Mr.] Galbreath's specific behavior, the City may not be held liable because [it] does not maintain a policy of applying the ordinance in an unconstitutional manner." Okla. City Aplee. Br. at 27. We disagree.

---

[8] In doing so, we express no opinion on the ordinance's facial validity.

Our precedent forecloses the City's argument. We have held that an as-applied challenge to an ordinance can give rise to municipal liability. In *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271 (10th Cir. 2009), Park City police officers arrested the plaintiff for selling artwork on public property without a license in violation of two city ordinances. *See id.* at 1274. The plaintiff sued Park City for damages and declaratory relief, alleging the ordinances were unconstitutional as applied to his expressive activity in violation of the First Amendment. *See id.* The district court granted Park City's motion to dismiss, reasoning the city could not be held liable for a single unlawful application of an otherwise constitutional ordinance. *See id.* at 1274-75; *see also Christensen v. Park City Mun. Corp.*, No. 2:06-CV-202 TS, 2007 WL 2908288, at *1 (D. Utah Oct. 3, 2007) ("[A] city will not automatically be liable under § 1983 if one of its employees happened to apply a constitutional policy in an unconstitutional manner . . . ." (quotations and alterations omitted)).

We reversed, reasoning "[i]f it turns out that the relevant ordinances are unconstitutional, whether on their face *or as applied* to Mr. Christensen, the liability falls on the city." *Christensen*, 554 F.3d at 1279 (emphasis added). We concluded municipal entities "may be subject to liability under § 1983" if they "make[] and enforce[] a law that is unconstitutional as applied." *Id.* 1280.

Here, "there is no question" Oklahoma City's disorderly conduct ordinance, like the "city ordinances" at issue in *Christensen*, "reflect[s] the 'official policy' of the municipality." *Id.* at 1279; *see also Monell*, 436 U.S. at 690 ("ordinance"); *Connick v.*

-10-

*Thompson*, 131 S. Ct. 1350, 1359 (2011) ("[o]fficial municipal policy" includes the "decisions of a government's lawmakers"). Officer Parton arrested Mr. Galbreath for violating the ordinance. *See* Aplt. Appx., Vol. I at 191 (police report asserting that Mr. Galbreath "was placed under arrest for disorderly conduct"), 197 (citation alleging Mr. Galbreath "commit[ed]" the "offense" of "Disorderly Conduct"). Consequently, if the ordinance was unconstitutional as applied to Mr. Galbreath's conduct, then Oklahoma City "may be subject to liability under § 1983." *Christensen*, 554 F.3d at 1280.

2. **Vagueness As Applied**

We review the district court's summary judgment ruling on Mr. Galbreath's as-applied vagueness claim de novo. *See United States v. Protex Indus.*, 874 F.2d 741, 743 (10th Cir. 1989) ("The question of whether a statute has been rendered unconstitutionally vague as applied is a question involving issues of law."); *see also Faustin v. City, Cnty. of Denver, Colo.*, 268 F.3d 942, 947 (10th Cir. 2001) (reviewing grant of summary judgment on vagueness claim de novo).

"To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 130 S. Ct. 2896, 2927-28 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). For an as-applied vagueness challenge, we must tether our analysis to the factual context in which the ordinance was applied. *See United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) ("Because this is an as-applied

-11-

challenge, we consider this statute in light of the charged conduct.").  At summary judgment, we view the evidence in the light most favorable to the non-moving party—here, Mr. Galbreath.  *See, e.g.*, *Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013).

The City's ordinance provides:  "A person is guilty of disorderly conduct, a Class 'a' offense, when such person:  . . . causes public alarm without justification."  City of Oklahoma City, Ordinance No. 22210, § 30-81(b) (adopted May 6, 2003).  The ordinance does not define "public alarm" or "without justification," and the parties have not pointed us to an Oklahoma case construing these terms.  "We are thus relegated, at best, to the words of the ordinance itself."  *Coates v. City of Cincinatti*, 402 U.S. 611, 614 (1971); *see also City of Chicago v. Morales*, 527 U.S. 41, 68 (1999) (O'Connor, J., concurring) ("[W]e cannot impose a limiting instruction that a state supreme court has declined to adopt.").

Mr. Galbreath contends this language was unconstitutionally vague as applied to his activity in the park because (1) it failed to give adequate notice to a person of ordinary intelligence that his conduct was unlawful and (2) ceded too much enforcement discretion to Officer Parton.  Because we conclude the district court erred in granting summary judgment to the City on the adequate notice element, we do not consider whether the ordinance ceded too much enforcement discretion to Officer Parton.

In evaluating the adequate notice element, we must determine whether a reasonable person in Mr. Galbreath's position would have "'fair notice from the

-12-

language' of the [ordinance] 'that the particular conduct which he engaged in was punishable.'" *United States v. Baldwin*, 745 F.3d 1027, 1031 (10th Cir. 2014) (quoting *Parker v. Levy*, 417 U.S. 733, 755 (1974)); *see also United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2012) ("In an as-applied challenge, a statute is unconstitutionally vague if it fails to put a defendant on notice that his conduct was criminal. For statutes involving criminal sanctions the requirement for clarity is enhanced." (quotations and alterations omitted)).

In granting the City's motion for summary judgment on Mr. Galbreath's as-applied vagueness claim, the district court reasoned briefly as follows:

> For no apparent reason, plaintiff was behaving in a public place in an alarming or disconcerting manner. When given the opportunity to explain, plaintiff replied "my morning exercises" and proceeded immediately with conduct which a reasonable person might have viewed as threatening, or at least as something other than an ordinary "morning exercise." While plaintiff's arrest, under the circumstances as we now know them to be, was perhaps unfortunate, it did not violate his due process rights.

*Galbreath v. City of Oklahoma City*, No. CIV-11-1336-HE, 2012 WL 5289456, at *8 (W.D. Okla. Oct. 24, 2012). On its face, the district court's analysis points to denying summary judgment, not granting it. If a reasonable person "might" have viewed Mr. Galbreath's activity in the park as "threatening" or "something other than" ordinary morning exercises, then a reasonable person could also conclude Mr. Galbreath's conduct was neither threatening nor out of the ordinary. The district court's analysis turned well-established principles of summary judgment on their head.

-13-

Mr. Galbreath testified he was singing and doing ballet exercises in high-heel shoes as a form of physical therapy to relieve pain from a hip disorder. He exercised with the assistance of a roughly 3-foot-long cane. He twirled his cane for a few seconds in a choreographed dance move when Officer Parton confronted him. At that time, Mr. Galbreath had been at the park about five minutes. Despite these facts, the district court concluded Mr. Galbreath "was behaving in a public place in an alarming or disconcerting manner." *Galbreath*, 2012 WL 5289456, at \*8. In doing so, "the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion." *Tolan v. Cotton*, 134 S. Ct. 1861, 1867-68 (2014).

Viewing the facts in the light most favorable to Mr. Galbreath, a reasonable jury could conclude he lacked fair notice that his conduct in the park could lead to criminal sanctions under the City's disorderly conduct ordinance.

First, nothing in the plain language of the ordinance suggests that singing and performing choreographed ballet moves in the park with a 3-foot cane while wearing high heels would cause "public alarm." *See* American Heritage Dictionary 39 (5th ed. 2011) (defining "alarm" as "[s]udden fear or concern caused by the realization of danger or an impending setback"); *see also Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012) (holding that the term "alarm," as used in a municipal ordinance, was unconstitutionally vague in part because it failed to give individuals of common comprehension notice of the prohibited conduct).

-14-

Second, the ordinance's plain language failed to give Mr. Galbreath notice that any public alarm caused by these morning exercises would be "without justification." *See* Black's Law Dictionary (9th ed. 2009) (defining "justification" as "[a] lawful or sufficient reason for one's acts or omissions"); *cf. Morales*, 57 U.S. at 56-57 (plurality op.) (ordinance forbidding "remain[ing] in any one place with no apparent purpose" unconstitutionally vague in part because it failed to give adequate notice); *Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 489 (4th Cir. 1983) (holding, without any "difficulty," "that the term 'unnecessary' in the general prohibitory language of the Ordinance [was] unconstitutionally vague").

Third, the ordinance lacks a scienter requirement, which could have mitigated the indefiniteness of the other terms when applied to Mr. Galbreath's conduct. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000) (fair notice concerns can be "ameliorated" by the fact that the challenged statute "contains a scienter requirement"); *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988) ("[A] scienter requirement may mitigate a criminal law's vagueness by ensuring that it punishes only those who are aware their conduct is unlawful."); *Stahl v. City of St. Louis*, 687 F.3d 1038, 1041 (8th Cir. 2012) (holding that an ordinance was unconstitutionally vague in part because it lacked a scienter requirement in that violation turned on the reactions of third parties rather than the individual whose actions were involved).

Given the foregoing, a reasonable jury could find the ordinance failed to give a reasonable person in Mr. Galbreath's position "fair notice . . . that the particular conduct

-15-

which he engaged in was punishable." *Baldwin*, 745 F.3d at 1031 (quotations omitted). In concluding otherwise, the district court "failed to view the evidence at summary judgment in the light most favorable to [Mr. Galbreath] with respect to the central facts of this case," *Tolan*, 134 S. Ct. at 1866. Perhaps facts will emerge on remand establishing Mr. Galbreath had adequate notice his conduct was unlawful. We express no opinion on that matter or whether the ordinance ceded too much enforcement discretion to Officer Parton in this instance. *See Yellowbear v. Lampert*, 741 F.3d 48, 64 (10th Cir. 2014) ("For now, however, these subtler (and admittedly more difficult) questions remain for the parties and district court to consider on remand."). We merely hold that the district court erred in granting summary judgment to the City at this juncture because a reasonable jury could find Mr. Galbreath lacked fair notice that his conduct could be punished.

## III. **CONCLUSION**

For the foregoing reasons, we (1) affirm the district court's summary judgment grant of qualified immunity to Officer Parton and (2) reverse its summary judgment grant

to the City on Mr. Galbreath's as-applied void-for-vagueness claim. We remand for

further proceedings consistent with this opinion.[9]

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

[9] We agree with the parties that the appendix documents containing medical information about the appellant and not pertinent to the merits of this appeal should remain under seal. *See Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.2d 1124, 1136 (10th Cir. 2011).